IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MARTHA R. YOUNG,

    Plaintiff,

    v.

ONE WEST BANK, FSB,

    Defendant.

No. 3:10-cv-00830-MO

OPINION AND ORDER

MOSMAN, J.,

    Plaintiff, Martha Young, brings one Truth in Lending Act ("TILA") claim against defendant, One West Bank, FSB ("OWB"), seeking damages and rescission of her adjustable rate home loan. Defendant filed a Motion to Dismiss [16] plaintiff's first amended complaint, which I subsequently converted into a motion for summary judgment. OWB filed a memorandum in support of the converted summary judgment motion [40], plaintiff responded [51], defendant replied [56], and Ms. Young filed a surreply [64]. I held oral argument on March 12, 2012, and thereafter requested that the parties submit two-page letters [76] [77], as stated on the record. I have reviewed the extensive filings in this case, including the original briefing with

1 – OPINION AND ORDER

regard to the motion to dismiss, and deny defendant's Motion for Summary Judgment [16] for the following reasons.

## UNDISPUTED FACTS

Ms. Young was contacted about the possibility of refinancing her home loan in May or June of 2007, by Richard Ortiz, an agent for U.S. Financial Funding ("USFF"). (Kono Decl. [41] Ex. 1, 30). She spoke with Mr. Ortiz between five and ten times over the following few weeks, as well as mailed him several documents in order to apply for the loan. (*Id.* at 32; 37). Plaintiff was approved and the loan closing took place on July 19, 2007. (*Id.* at 65).

The signing on July 19, 2007, was conducted by mobile notary Gail Sams. *See* (*id.* at 66). In relevant part, Ms. Young endorsed the following documents: (1) TILA disclosure statement ("TILDS") dated July 2, 2007, (Del Carlo Decl. [53] Ex. D); (3) TILDS dated July 10, 2007, (*Id.*, Ex. E); and a (3) TILDS dated July 19, 2007. (*Id.*, Ex. F).

Despite the fact the three TILA disclosure statements (" TILDSs") at issue list varying signature dates, the parties do not dispute that Ms. Young signed all three documents on July 19, 2007. There are two significant inconsistencies between the three TILDSs. First, there are discrepancies between the "material" TILA disclosures.[1] Second, the TILDSs dated July 2, 2007, and July 10, 2007, specify via a "√" at the bottom of the documents that "all dates and numerical

---

[1]

| TILA MATERIAL DISCLOSURES | TILDS Dated 7/2/07 | TILDS Dated 7/10/07 | TILDS Dated 7/19/07 |
|---|---|---|---|
| APR | 6.766% | 0.075% | 8.328% |
| Finance Charge | $226,096.37 | $224,563.37 | $289,277.57 |
| Amount Financed | $132,512.00 | $134,045.00 | $128,873.83 |
| Total of Payments | $358,608.37 | $358,609.37 | $418,151.40 |
| Payment Plan (Number and Amount) | $476.57 (60)<br>$596.52 (12)<br>$726.98 (12)<br>$565.80 (12)<br>$1,011.04 (12)<br>$1,157.20 (251)<br>$1,152.89 (1) | $476.57 (60)<br>$596.52 (12)<br>$726.98 (12)<br>$565.80 (12)<br>$1,011.04 (12)<br>$1,157.20 (251)<br>$1,152.89 (1) | $476.57 (48)<br>$975.16 (36)<br>$1,074.33 (36)<br>$1,339.56 (240) |

disclosures except the late payment disclosures" are "estimates." (*Id.*, Ex. D; Ex. E). On the other hand, the July 19, 2007, TILDS indicates that USFF was the creditor, that plaintiff was the borrower, and that the numerical disclosures were not estimates. (*Id.*, Ex. F). The "material" TILA disclosures in the July 19, 2007, TILDS accurately reflect the terms of Ms. Young's loan, and this was the only TILDS that she took home from closing. (Fir. Am. Compl. [11] ¶ 8.A).

USFF assigned plaintiff's loan to IndyMac in July 2007. IndyMac failed, and the FDIC took over to create a new bank conservatorship, known as IndyMac Federal Bank. The FDIC then placed IndyMac Federal Bank into receivership and entered into a Master Purchase Agreement for OWB to purchase some of IndyMac Federal Bank's assets, including residential mortgages. OWB eventually became the holder of plaintiff's loan. (Def. Supp. Resp. [56] 2).

## STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of…identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). I must view the evidence in the light most favorable to the nonmoving party, as well as draw all "reasonable" inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Defendant's converted motion for summary judgment raises two primary issues. The first issue is whether the material TILA disclosures at issue here were clearly and conspicuously

disclosed. Second, it must be determined whether Ms. Young can tender the outstanding principal loan balance as required under the TILA.

### I. Clear and Conspicuous Disclosures

The TILA requires that "material" disclosures be made "clearly and conspicuously." 15 U.S.C. § 1632(a); 12 C.F.R. § 226.17(a). The lender must disclose the APR, the finance charge, the amount financed, the total number of payments, and the payment schedule. 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18. "Clear and conspicuous disclosures" are disclosures that a "reasonable" consumer would "notice and understand." *Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883, 892 (9th Cir. 2009). "[C]larity and conspicuousness [under TILA] is a question of law." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1200 (9th Cir. 2010). "The courts have construed TILA as a remedial statute, interpreting it liberally for the consumer." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).

Neither party disputes the accuracy of the material TILA disclosures provided to plaintiff in the TILDS dated July 19, 2007. Nonetheless, plaintiff argues that the compliant TILA form still violates the TILA because the material disclosures conflict with the disclosures in the earlier dated TILDSs, thereby rendering the accurate disclosures unclear and inconspicuous. Ms. Young cites *Pulphus v. Sullivan*, in which the plaintiff signed "two conflicting" TILDSs at closing. No. 02 C 5794, 2003 WL 1964333, at *2 (N.D.Ill., April 28, 2003). One TILDS appeared to have been prepared before closing and the other on the day thereof. *Id* at *13. The court denied defendant's motion to dismiss, holding that plaintiff's allegation was a "paradigmatic violation of TILA" because receiving "two, contradictory TILA disclosures simultaneously is equivalent to alleging that she received none." *Id.* at *15.

Also relevant is *Michalowski v. Flagstar Bank, FSB*, in which the plaintiffs alleged a TILA violation because defendant issued two TILA disclosures at closing of the mortgage loan transaction—one marked as an estimate and the other not—"without specifying which was the operative statement." No. 01 C 6095, 2002 WL 113905, at *4 (N.D. Ill., January 25, 2002). Plaintiffs only signed one statement, the statement that was not marked as an estimate, and thus, the court held that the endorsed TILDS was the only operative statement and dismissed for failure to state a claim. *Id*. In this case, by contrast, Ms. Young signed both the final TILDS and the TILDSs marked as estimates, and the figures between the three signed documents conflicted.

Similarly, in *Bowmer*, plaintiff received two estimated TILDSs and one final TILDS at closing. *Bowmer v. NovaStar Mortg. Funding Trust, Series 2006-1*, 711 F.Supp. 2d 390, 395 (E.D. Pa. 2010). Plaintiff signed one estimate TILDS and the final TILDS, and the APR varied in all three. *Id*. The court preliminarily found that the multiple TILDSs did not violate any of the technical requirements of TILA or Regulation Z, as the terms in the final TILDS, like in this case, were accurate and timely delivered. Moreover, the court noted that providing TILDSs that are "clearly labeled" as estimates is not a per se TILA violation. *Id*. The court did not then analyze however whether the final, accurate material TILA disclosures were rendered unclear and inconspicuous by the estimate TILDS that plaintiff signed at closing, and instead solely addressed plaintiff's argument that the variations between the TILDSs constituted an illegal bait-and-switch. *Id*. at 397. ("Absent an allegation that the disclosures were intentionally misleading, I cannot conclude that the first TILDS—or the "bait"—is inaccurate for purposes of TILA.").

I agree that the TILDSs in this case do not violate any of the technical requirements of the TILA or Regulation Z. However, technical compliance does not fully answer the question of whether the technically satisfactory final material TILA disclosures were clear and conspicuous.

Instead, the sole issue is whether a "reasonable" consumer would "notice and understand" the accurate TILA material disclosures, despite signing estimate TILDSs at closing that conflicted with the final TILDS. *Barrer*, 566 F.3d at 892.

Plaintiff was presented with and signed three TILDSs, all on the day of closing. The APR, finance charge, amount financed, total number of payments, and payment plan disclosures all varied between the estimate TILDSs and the final TILDS. The fact that the estimate TILDSs were marked as such is not dispositive, considering that Ms. Young was asked to sign all three documents on the same day, and that the estimates are marked as such only by a single checked box. Further, nothing in this record indicates any further instruction or warning to plaintiff; she had only the forms in front of her, in the presence of a notary public, in order to figure out the material disclosures. Through this lens, I find that the final, accurate material disclosures in this case were unclear and inconspicuous.

The one constant underlying the TILA material disclosures here is that Ms. Young entered into a negative amortization loan. But, an average consumer is left to guess the significance of the variations between the APR, finance charge, number of payments, and total payments between the three TILDSs. For example, the TILDS dated July 2, 2007, indicates that Ms. Young was financing more in comparison to the July 19, 2007, TILDS, and paying less in total and in terms of APR, but all the while scheduled to make additional reduced payments. This is not the type of clarity required by the TILA, bearing in mind this Court interprets the Act liberally for the consumer.

Defendants argue that I should nonetheless grant summary judgment in OWB's favor because plaintiff has not produced evidence showing that USFF directed the notary, who was an independent contractor hired by a notary signing company, to have Ms. Young sign the estimate

6 – OPINION AND ORDER

TILDSs. In other words, defendant asserts that they can only be found liable here if there is evidence that the notary was an agent of USFF. However, OWB cites no authority that holds the involvement of a third-party signing service effectively eliminates potential liability for the creditor when the creditor produces unclear documents. Even assuming plaintiff is required to produce evidence to this end, there is a material dispute of fact whether USFF did indeed direct that Ms. Sams provide the three TILDSs to Ms. Young at closing. The "Specific Closing Instruction" provided by USFF to the notary signing company indicates "Truth in Lending" as a category of documents that was necessary to complete the closing. (Kono Decl. [41] Ex. 1, 175). There is nothing conclusive later in the instructions whether the "Truth in Lending" category encompassed only the final TILDS, or both the final and the estimates, and I therefore find it reasonable to infer the latter considering Ms. Young's status here as the nonmoving party.

I do note that the instructions later indicate that the notary was to "deliver" one copy of the TILDS, although as defendant's counsel has aptly noted, delivery of the final TILDS is a different instruction altogether, and thus, it is also reasonable when viewing the facts in the light most favorable to Ms. Young to infer that this separate instruction merely limited the notary to only sending the final TILDS home with plaintiff, which is what happened in this case. (*Id.*). Moreover, it is clear that the "Specific Closing Instruction" is not comprehensive. For example, it did not instruct the notary to provide the borrower with two copies of the Notice of Right to Cancel, which is clearly required under TILA. Accordingly, there are material issues of fact on the issue of agency.

Therefore, I find that the TILA material disclosures in this case were not made "clearly and conspicuously" as a matter of law.

## II.     Tender

The TILA requires the consumer to tender back loan proceeds received once a creditor performs its rescission-related obligations. 15 U.S.C. § 1635(b). The facts in this case, even when viewed in light most favorable to the nonmoving party, are undisputed that plaintiff would not be able to tender the full amount of the loan if defendant performed its rescission-related obligations. The issue then is whether I should exercise my "equitable discretion" to impose conditions allowing Ms. Young to tender back the loan proceeds over time, as opposed to a lump sum tender of the outstanding principal balance. *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171–73 (9th Cir. 2003); *see also Semar v. Platte Valley Fed. Savings & Loan Ass'n*, 791 F.2d 699, 705-06 (9th Cir. 1986).

In determining whether to exercise my equitable discretion, I must take "into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds." *Yamamoto*, 329 F.3d at 1173. Plaintiff entered into a negatively amortizing loan based on an unclear and inconspicuous TILDS, as well an inflated income figure. Ms. Young indicates that she intends to obtain a reverse mortgage for $120,000 and then pay the remaining tender amount in monthly installments over time. (Young Decl. [52] ¶ 6); (Pl. Resp. to Conv. Mot. for Sum. J. [51] 19). While she has not offered definitive proof in support of this statement, neither has defendant definitively proven the contrary. Moreover, it would defy the logic behind the TILA to hold that a consumer, who is rightfully entitled to rescission of a negatively amortizing loan, cannot then obtain said rescission because the interest previously added to the loan's principal balance forecloses the consumer from prequalifying for a reverse mortgage before the negatively amortized interest is removed through the rescission process.

Upon consideration of all the circumstances in this case, I find that the equities favor allowing Ms. Young to tender in monthly installments, with defendant maintaining a security interest in her home until the outstanding principal balance is paid back in full. My finding does not give Ms. Young carte blanche in fashioning a rescission remedy. It remains to be seen whether plaintiff will be able to obtain a reverse mortgage, and if I subsequently learn that she is unable to do so, I will revisit whether the equities continue to favor conditional tender based on the nature of the requested remedy.

## CONCLUSION

Based on the foregoing reasons, I DENY defendant's Converted Motion for Summary Judgment [16]. Defendant's Motion to Strike pursuant to Fed. R. Civ. P. 56(c)(2) contained within its Reply in Support of its Converted Summary Judgment Motion [56] is DENIED.

IT IS SO ORDERED.

DATED this 30 day of March, 2012

MICHAEL W. MOSMAN
United States District Court